IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PANDORA JEWELRY, LLC : | |
| : | |
| v. : | CIVIL NO. CCB-06-600 |
| : | |
| CHAMILIA, LLC : | |

...o0o...

**MEMORANDUM**

Pandora Jewelry, LLC has sued Chamilia, LLC for infringement of its US Patent No. 7,007,507 (the "'507 patent") issued by the PTO on March 7, 2006. The '507 patent, in general terms, involves a method of allowing decorative beads to be strung along a strand (a bracelet or necklace) without bunching and yet being readily interchangeable in their locations along the strand. The issue now before the court is claim construction.[1]

The applicable principles of law are familiar and not significantly disputed by the parties. The construction of a patent claim is a matter of law exclusively for the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996). To determine the meaning of claims, the court initially considers three sources: the claim, the specification, and the prosecution history. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995). Extrinsic evidence, "including expert and inventor testimony, dictionaries, and learned treatises," may be received by the court in its discretion if it is helpful to understand the patent, or if needed to resolve an ambiguity in the intrinsic evidence. *Id.* at 980; *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1317-18 (Fed. Cir. 2005). The words of a claim are generally given their "ordinary and customary meaning," that being "the meaning that the term would have to a person of ordinary

---

[1] The parties have fully briefed the issue, oral argument was heard on March 29, 2007, and supplemental briefing was received in April 2007.

skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-13.  Further, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313.[2]  The Federal Circuit cautions, however, against "elevating the dictionary to . . . prominence" over the specification, *id.* at 1321, while also cautioning against the danger of "reading limitations from the specification into the claim," *id.* at 1323; *see also Renishaw PLC v. Marposs*, 158 F.3d 1243, 1248 (Fed. Cir. 1998).  It is also important to note that a claim is construed "without reference to the accused device;" only after the claims are construed is the claim construction applied to the accused device to determine infringement.  *SRI Int'l v. Matsushita*, 775 F.2d 1107, 1118 (Fed. Cir. 1985).

The terms that need to be construed and the independent claims in which they appear are as follows:

Claim 1 (independent apparatus claim): "connector assembly," "band fixedly attached to the strand," "ornament," and "keeper."[3]

---

[2] In this case, the parties appear to have agreed that a "person of ordinary skill in the art" includes a person with knowledge of jewelry design and at least three years of specialized training or ten years of work in jewelry design.  (Altobelli Dec. at ¶ 7, Dep. at 84-85; Brown Dep. at 79-80.)  Both parties' experts meet these criteria.

[3] In full, Claim 1 states:
    A strand jewelry device comprising:
    a strand having a first end and a second end,
    a **connector assembly** for reversibly coupling the first end and the second end of
        the strand,
    at least one **band fixedly attached to the strand**, the band presenting an outer
        circumference,
    at least one **ornament**,
    the ornament having a through opening of greater circumference than the outer
        circumference of the band, the greater circumference being sufficiently

Claim 13 (independent method claim): "ornaments," "connector assembly," "band . . . fixed on the strand," and "keeper."[4]

Claim 16 (independent apparatus claim): "connector assembly," "keeper," "ornament," and "band fixedly circumscribing the strand."[5]

---

    large to permit complete passage of the ornament over the band, and
at least one **keeper** configured for reversible attachment over the band,
    the keeper being sufficiently large to prevent further passage of the ornament
        across the band when the keeper is attached to the band,
wherein the keeper interacts with the band by abutment to restrict the movement
    of the ornament when the ornament resides on the strand.

[4] In full, Claim 13 states:
A process of reversibly restricting the movement of **ornaments** on a strand, wherein the strand has a **connector assembly** for detachably coupling the first end with the second end of the strand to configure the strand as a loop, the ornaments have bores and are strung on the strand by their bores, and a **band** having an external diameter less than the diameter of the ornament bores **is fixed on the strand**, comprising the steps of:
    a.    stringing at least one ornament onto the strand; and,
    b.    attaching to the band a **keeper** having an external diameter greater than the diameter of the ornament bore.

[5] In full, Claim 16 states:
A strand jewelry device that is selectively configurable by a wearer for positional ornament retention, comprising:
a strand having
    a first end,
    a second end, and
    at least one band of variant cross-section with respect to adjacent portions
        of the strand that are immediately adjacent to the band:
a **connector assembly** for detachably coupling the first end with the second end
    of the strand to configure the strand as a loop;
at least one **keeper** configured and arranged for selective placement around the
    band,
the keeper having a bore of complementary dimensions with respect to the variant
    cross-section such that the keeper is retained in position at the band by
    abutment when installed on the band,
at least one **ornament**,

The first term requiring construction is "connector assembly." Pandora's construction, "any device which can be used to connect two elements together," is more persuasive. (Pandora's Brief at 15.) Chamilia's construction adds a term, "end cap," which does not even appear in the '507 patent.[6] The prosecution history, specifically the November 18, 2004 Preliminary Amendment that deleted the term "hook component" and broadened it by stating "a connector assembly for reversibly coupling the first end and second end of the strand," supports Pandora's construction, as does the ordinary meaning of "connector assembly," which one of ordinary skill in the art would understand to mean any device that can be used to connect two elements together. (Altobelli Dec. at ¶ 10.)[7] Chamilia's construction, first advanced at the *Markman* hearing, adds a requirement ("threaded end caps") that is not supported by the claims, specifications, or prosecution history of the '507 patent.

The second phrase requiring construction is "band fixedly attached to the strand." Pandora asserts that "fixedly" does not require permanence; its proffered construction is a "band creating a raised surface on the strand by either a permanent or reversible method of attachment so that when the band is attached to the strand, it does not move relative to the strand, it is

---

        the **band fixedly circumscribing the strand** to provide the variant cross-section
            as a larger circumference with respect to the strand, the ornament defining
            a hole of sufficient dimension to pass over the larger circumference,
      the keeper having sufficient outer dimensions to prevent the ornament from
            moving across the keeper by abutment between the keeper and the band
            when the keeper the ornament are installed on the strand.

[6] Chamilia proposes that "connector assembly" be construed as "[e]lements attached to the end of the strand that enable the strand to be connected to form a loop. Threaded end caps are part of the connector assembly."

[7] Nothing in Mr. Brown's declaration or deposition testimony contradicts this understanding. (*See, e.g.*, Brown Dep. at 43-44.)

fixed." Chamilia construes this term in two parts, contending that a "band" means "an element separate and distinct from the strand and the keeper, that is 'fixedly attached' to the strand, and fully circumscribes the strand, thereby increasing the entire circumference of the strand," and that "fixedly attached" means that "bands are connected to the strand by the manufacturer, at predetermined points selected by the manufacturer, with an intended degree of permanence that precludes a necklace wearer from (a) adding bands to a strand, (b) removing bands from a strand, or (c) in any way adjusting the bands' location along the strand, which in turn restricts the location of keepers." In essence, the parties dispute whether the word "fixedly" implies permanence, at least in regard to the wearer, or reversibility: may the bands be detached and moved to different positions along the strand, like the keepers, or are their positions on the strand determined and fixed by the manufacturer. For the reasons that follow, I will construe the term "fixedly attached" to mean the degree of permanence suggested by Chamilia.[8]

First, while the words of a claim are given their ordinary and customary meaning, they must be read in the context of the particular claim and indeed the entire patent. If considered entirely apart from the patent, the word "fixedly," which itself is not a technical term (Altobelli Dep. at 78-79,) could indeed cover either the permanent or reversible attachment of an object (e.g., the binder clip Pandora's counsel placed on, and removed from, his finger during oral argument).[9] If considered in the context of the claims and the entire patent, however, the word

---

[8] I cannot, however, find any reason why the requirement that the band "fully circumscribe the strand" must be part of the claim construction.

[9] As Pandora points out, the ordinary dictionary definition of "fixed" includes "securely placed or fastened" as well as "not adjustable" and "permanently and definitely located." (See Chamilia's Brief, Ex. 1).

5

"fixed" or "fixedly" must be understood in contrast to the "reversible" attachment of the keeper.

Beginning with Claim 1, it is worth noting that the connector assembly "reversibly" couples the ends of the strand, consistent with the wearer's need to securely fasten but also remove the bracelet or necklace (strand) from her person. While this is not part of the specific term under construction, the use and meaning of the term "reversibly" in this context supports the same understanding in the context of the disputed term "band." In claim 1, the band is "fixedly" attached, the ornament passes over the band, and the keeper is "configured for <u>reversible</u> attachment" over the band (emphasis added); thus the keeper is the element that must be added to the band by the wearer to restrict the movement of the ornament and that may be removed to permit a different arrangement of the ornaments on the strand. In Claim 13, the independent method claim, the process of "reversibly" restricting the movement of ornaments on a strand which has a band "fixed" on it comprises only two steps: (a) stringing an ornament on the strand, and (b) attaching a keeper to the band. Again, it is the keeper, not the band, that permits "reversible" restriction of the ornaments by the wearer. Claim 16, the independent apparatus claim, describes a strand "<u>selectively</u> configurable by the wearer for positional ornament retention," further claiming a keeper "configured and arranged by <u>selective</u> placement around the band," while the band "<u>fixedly</u>" circumscribes the strand (emphasis added). In summary, nothing in the claim language suggests that the wearer will be expected or be able to reverse, select, or otherwise move the bands from their predetermined positions along the strand. Bands, strands, ornaments and keepers are separate elements with separate, though related and complementary, functions.

The language of the remaining sections of the patent, including the "abstract" and "brief

summary" as well as the "detailed description," is consistent with a construction of the disputed terms that includes permanently attached bands and reversibly attached keepers.[10] As the Federal Circuit has stated, it is "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." *Phillips*, 415 F.3d at 1317; *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("Thus, the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.") The detailed description explains, e.g., that the movement of beads are restrained by threaded and hinged keepers, "<u>removably</u> fixed on bands . . . which are <u>fixedly</u> attached to the strand." (Col. 3, ll. 41-43) (emphasis added). Further, it explains the role of the wearer as follows:

> In use, the wearer strings beads and one or more threaded keepers on a strand having one or more threaded bands. The order of the beads and keepers is chosen in order to provide the desired distribution of beads on the necklace. The use of a hinged keeper provides additional flexibility for the wearer, as the hinged connector can be attached after the beads and the threaded keeper have been strung. The arrangement of beads and keepers may be altered by simply restringing the components on the strand.

(Col. 6, ll. 33-41). Again, nothing suggests that the wearer may alter the position of the bands.

Continuing with the analysis of the claims and specifications, both sides point to Claim 27, a means-plus function claim within the meaning of 35 U.S.C. § 112 ¶ 6. Construction of

---

[10] The Abstract explains that "Bunching is prevented by keepers which are <u>removably</u> attached to bands <u>fixed</u> at intervals . . . ." The Brief Summary refers to a "band <u>fixedly</u> attached to the strand," whereas the keeper is "capable of interacting with the band with <u>reversible</u> attachment of the band and keeper . . . ." (Col. 2, ll. 14-15, 21-22). It is the keeper's placement that thereby restricts the movement of the beads. Similarly, the keepers are "<u>removable</u>" "so the distribution of the beads on the necklace can be modified by the necklace wearer." (*Id.* at ll. 27-29) (emphasis added).

7

Claim 27 would require (1) determining the claimed function and (2) identifying the corresponding structure in the written description of the patent that performs that function. *Applied Medical Resources v. U.S. Surgical Corp.,* 448 F.3d 1324, 1332 (Fed. Cir. 2006). Claim 27 refers to a "means for adapting a circumference of the strand to permanently increase the circumference at a locus that permits passage of an ornament over the locus." As Chamilia contends, the only structure in the written description that could perform the function of permanently increasing the circumference of the strand is the "fixedly attached" band. This point is not dispositive; indeed Pandora argues that the use of the word "permanently" here and not in the other claims suggests a distinction between fixedly and permanently. Yet Pandora's argument applies equally well to the much more frequent contrast between "fixedly" and "reversibly" in the claims at issue. Again, nothing in the language of claims 1, 13, and 16 suggests that the wearer would be altering the position of the band on the strand.

     Chamilia also argues that its construction of "fixedly attached" as requiring some degree of permanence is supported by the methods specified for fixing the band to the strand, which include "compression on the strand, interaction with the links of a chain, . . . adhesive or any other suitable means of fixation of a band on a strand." (Chamilia's Brief at 10.) Chamilia contends that "compressing a metal band onto a strand, interlocking a band with the links in a strand's chain, or attaching a band by adhesion - all methods that require the use of tools and skill - are properly performed by a manufacturer prior to sale." (*Id.*) In isolation, this language might not strongly support Chamilia's position, as the words "compression," "interaction" and "adhesive" could suggest methods performed by a wearer that could be undone, though perhaps

8

with some difficulty.[11]  In the context of the entire patent, however, as explained above, there is nothing to suggest that the wearer would be performing that attachment or in any way moving the band from its predetermined position on the strand.  Indeed, there would be no need to define an ornament as having "a through opening of greater circumference than the outer circumference of the band," so that it could pass over the band, if the wearer were expected to freely move both the band and the keeper to different positions along the strand.

Examination of the prosecution history further supports Chamilia's construction.  In its May 31, 2005, response to the examiner, amending its claims to overcome the rejections based on prior art, Pandora emphasized the distinction between the band, "fixedly attached," and the keeper "configured for reversible attachment over the band," with the ornament having an opening such that it is "free to pass over the band but is restrained by a selectively attached keeper."  Pandora's amendment to claim 1 further included the deletion of a phrase recognizing a "<u>reversible</u> attachment of the band and keeper."  These amendments were necessary to distinguish the teachings of patents issued to Kanno (4,907,322) and Kuhn (3,983,716), neither of which taught of a permanent band that would allow the free passage of an ornament.  (*See* Hansen Dec., attachment).  Thus, in differentiating the '507 patent from the prior art, Pandora highlighted the interaction of a permanent band with a reversible keeper mechanism.

In summary, a "band" is an element separate and distinct from the strand and the keeper, that is connected to the strand by the manufacturer at predetermined points with an intended

---

[11] The parties' experts disagree about whether those processes could readily be performed by the user as compared to the manufacturer.  (*See* Altobelli Dep. at 31-32; Brown Dep. at 138-41.)  Were I to rely on the expert testimony, I would find Brown more persuasive in light of his experience and more thoughtful explanation of his reasoning.

degree of permanence that precludes a wearer from adding, removing, or adjusting the location of bands along the strand. A "keeper" is a device which can attach over a band to prevent further movement of ornaments, the device being configured for reversible attachment over the band. An "ornament" is a bead, bauble, bangle, pendant, or trinket that may be removably strung on the strand, with an opening in its center large enough to permit complete passage over a band but not so large as to permit passage over a keeper when the keeper is attached to a band. An "ornament" does not include a "keeper."[12]

A separate Order follows.

   September 27, 2007
        Date

            /s/
     Catherine C. Blake
     United States District Judge

---

[12] Although a keeper may have a decorative effect, the patent requires that an ornament have an inner opening (bore) of a circumference large enough to pass over a band, while a keeper does not.